# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PROTEN PERFORMANCE, LLC, ET AL.,** **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20-2464** |
| **AIM BRANDS, LLC,** **Defendant** | **SECTION: "E" (3)** |

## ORDER AND REASONS

Before the Court is Defendant AIM Brands, LLC's ("AIM") Motion for Leave to File Supplemental Notice of Removal[1] and Plaintiffs Corporate Outfitters, Inc ("Corporate Outfitters") and Proten Performance, LLC's ("Proten") Motion to Remand.[2]

## BACKGROUND

This suit arises out of an alleged June 2020 agreement between Plaintiffs and AIM, by which Plaintiffs agreed to purchase 2 million face masks from AIM. The masks were not compliant with National Institute for Occupational Safety and Health (NIOSH) standards.[3] Plaintiffs allege they agreed to purchase the non-certified masks to obtain the right to purchase from AIM an additional 22 million NIOSH-certified masks.[4] Plaintiffs

---

[1] R. Doc. 39. Plaintiffs oppose the motion for leave. R. Doc. 43. AIM filed a reply in support of its motion. R. Doc. 49.

[2] R. Doc. 12. AIM opposes the motion to remand. R. Doc. 16. Plaintiffs filed a reply in support of their motion to remand. R. Doc. 26. AIM filed a sur-reply in opposition. R. Doc. 33. The Court granted AIM's motion to conduct jurisdictional discovery. R. Doc. 34. AIM filed a supplemental memorandum. R. Doc. 47. Plaintiffs filed a supplemental memorandum. R. Doc. 51. Plaintiffs filed a Supplemental Declaration in Support of the Motion to Remand. R. Doc. 56.

[3] R. Doc. 1-2 at ¶ 7. AIM is a broker of personal protective equipment, including NIOSH-certified masks manufactured by Kimberly-Clark. *Id.* at ¶ 9.

[4] *Id.* Although Plaintiffs refer to this right to purchase as the "right of first refusal to purchase an additional 22 million" masks in paragraphs 7 and 8 of the state court petition (R. Doc. 1-2), they refer to this right as the "right to purchase" the masks in paragraphs 10, 11, 12, 13, and 15. Marc Miller also referred to the right as the right to purchase the masks rather than as a right of first refusal. *See* the Marc Miller Declarations, R. Docs. 12-2 at ¶ 9 ("[AIM] agreed that the purchase of the two million non-certified masks would give us the right to purchase the next 22 million NIOSH-certified masks. . .") and ¶ 38 ("all rights that they may have had to purchase masks from AIM, Brands, LLC").

allege they paid for and received delivery of the non-certified masks, but were not delivered the 22 million NIOSH-certified masks.[5]

On July 22, 2020, Plaintiffs filed suit against AIM in the 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana, for breach of contract, unjust enrichment, and breach of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA").[6] AIM was served under Louisiana's long-arm statute on August 11, 2020.[7] On September 9, 2020, AIM removed this case to the United States District Court for the Eastern District of Louisiana.[8]

On September 14, 2020, Plaintiffs moved to remand the action.[9] On October 6, 2020, AIM filed an opposition to the request for remand[10] and, in the alternative, moved for leave to conduct jurisdictional discovery.[11] The Court allowed the parties to conduct limited jurisdictional discovery with respect to assignments, from Corporate Outfitters, Ballard Logistics, LLC, Ballard Brands, or any other entities or individuals, if any, to Proten with respect to the purchase or the right to purchase masks from AIM.[12] On November 11, 2020, following the conclusion of the limited discovery, AIM filed the instant Motion for Leave to File a Supplemental Notice of Removal.[13]

In its original Notice of Removal, AIM asserts federal diversity jurisdiction under 28 U.S.C. § 1332.[14] Plaintiff Proten is a limited liability company whose sole members are

---

[5] *Id.* at ¶¶ 7-8
[6] R. Doc. 1 at ¶ 8; R. Doc. 1-2 at ¶¶ 27, 33, and 37.
[7] *Id.* at ¶ 9.
[8] R. Doc. 1.
[9] R. Doc. 12.
[10] R.Doc. 16.
[11] R. Doc. 18.
[12] R. Doc. 34.
[13] R. Doc. 39. Plaintiffs oppose the motion for leave to file the supplemental notice of removal. R. Doc. 43. AIM filed a reply in support of its motion. R. Doc. 49.
[14] R. Doc. 1 at ¶ 6. The amount in controversy is not in dispute. The alleged contractual damages are alleged to total more than $45 million. *Id.* at ¶ 38.

citizens of Louisiana and Texas.[15] Plaintiff Corporate Outfitters is a corporation incorporated under the laws of Louisiana with its principal place of business in this state as well.[16] Defendant AIM is a Delaware-based limited liability company whose members are citizens of Arkansas and Texas.[17] AIM alleges diversity jurisdiction exists even though a member of Proten and a member of AIM are citizens of Texas. AIM argues Plaintiffs are attempting to evade this Court's jurisdiction by collusive assignment to Proten and, as a result, Proten's citizenship should be ignored. As stated by AIM, "the alleged assignment of alleged contractual rights to Proten was done principally to defeat removal to this Court, meaning the citizenship of Proten should not be considered for diversity purposes."[18]

In its proposed supplemental notice of removal, AIM asserts Proten was improperly joined as a plaintiff in the state court petition. AIM argues there was no valid assignment of rights to Proten, leaving Proten without any reasonable possibility of recovery against AIM.[19] Accordingly, AIM argues Proten was improperly joined for the sole purpose of defeating diversity jurisdiction and its citizenship should be ignored when determining whether diversity jurisdiction exists.[20]

## **STANDARD**

Federal courts are courts of limited jurisdiction and possess only the authority conferred upon them by the U.S. Constitution or by Congress.[21] A common ground for removal is diversity jurisdiction, which is designed to provide out-of-state defendants a

---

[15] *Id.* at ¶ 19.
[16] *Id.* at ¶ 18.
[17] *Id.* at ¶ 17.
[18] *Id.* at ¶ 6.
[19] R. Doc. 39-2 at ¶ 36J.
[20] *Id.*
[21] *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

forum to litigate free of local prejudices.[22] When removal is based on federal diversity jurisdiction, 28 U.S.C. § 1332 requires the removing party to show that (1) complete diversity of citizenship exists between the parties, and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.[23] Jurisdiction is decided at the time of removal.[24] "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."[25]

The timeliness of removal is generally governed by 28 U.S.C. § 1446(b), which provides:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> . . .
>
> (2)(B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.
>
> . . .
>
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or *other paper* from which it may first be ascertained that the case is one which is or has become removable.[26]

---

[22] *Aerojet-General Corp. v. Askew*, 511 F.2d 710, 716 n6 (5th Cir. 1975) ("The very purpose of federal diversity jurisdiction is to avoid bias against parties from outside the forum state.").

[23] *Garcia v. Koch Oil Co. of Tex., Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citing *St. Paul Reinsurance Co. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

[24] *Id. See Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000) (recognizing that subsequent events, such as a reduction in the amount in controversy, will generally not divest jurisdiction).

[25] *See Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

[26] 28 U.S.C. 1446(b) (emphasis added).

Generally, a defendant must file a notice of removal within 30 days of being served the initial complaint.[27] An exception exists, however, if more than 30 days after service the defendant receives an "amended pleading, motion, order, or other paper from which it may be first be ascertained that the case is one which is or has become removable."[28] Discovery responses, including answers to interrogatories made by voluntary act of the plaintiff,[29] constitute an "other paper" under the statute, "triggering the 30-day removability period."[30] Discovery responses must be "unequivocally clear and certain" to support removal under this rule.[31]  This reduces premature "protective' removals" by defendants who fear being time-barred in cases with initial pleadings that lack sufficient information to determine any federal jurisdiction.[32] Judicial economy is promoted by relieving the Court from delving into what the defendant subjectively knew or did not know and instead allows the Court to look directly at the pleadings, motions, orders, and other paper.[33]

Once 30 days after service has passed, even if no "other paper" has been received, a defendant may seek to amend its notice of removal under 28 U.S.C. § 1653, which

---

[27] 28 U.S.C. § 1446(b)(1).

[28] 28 U.S.C. § 1446(b)(2)(3).

[29] *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992) ("Clearly the answer to interrogatory which triggered the filing of the notice of removal in this case is such an 'other paper.'") ; *See also S.W.S. Erectors, Inc.*, 72 F.3d at 494 (holding that the defendant may not produce the removable event, but rather that the plaintiff must voluntarily produce or plead information that reveals a removable ground for jurisdiction).

[30] *Cole ex rel. Ellis v. Knowledge Learning Corp.*, 416 Fed.Appx. 437, 440 (5th Cir. 2011). *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996) ("We hold that the affidavit, created entirely by the defendant, is not 'other paper' under section 1446(b) and cannot start the accrual of the 30–day period for removing. On the other hand, a transcript of the deposition testimony is 'other paper.'").

[31] *Bosky v. Kroger Texas, LP*, 288 F.3d 208 (5th Cir. 2002) (citing *DeBrey v. Transamerica Corp.*, 601 F.2d 480, 489 (10th Cir. 1979) (holding that if the 30-day period under § 1446(b) "is going to run, the notice ought to be unequivocal")).

[32] *Chapman*, 969 F.2d at 163.

[33] *Id.*

provides, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."[34]

## LAW AND ANALYSIS

### I.   AIM's motion for leave to file its supplemental notice of removal is granted.

AIM seeks to file a supplemental notice of removal following its receipt of Plaintiffs' responses to the limited jurisdictional discovery.[35] AIM argues the motion is timely because an other paper was provided during discovery that started a new 30-day removability period.[36] Plaintiffs argue the supplemental notice of removal is untimely under § 1446(b) because the new information in the discovery responses is not relevant to AIM's improper joinder allegations. Plaintiff argues such an argument would be unsuccessful because the amended notice of removal asserts diversity jurisdiction on an entirely different ground, improper joinder, and the amendment is beyond the scope of § 1653.[37] Although AIM did not attempt to justify the amendment of its notice of removal on the basis of § 1653, the Court finds this is the correct analysis.

Courts have allowed faulty allegations of diversity jurisdiction in notices of removal to be cured under § 1653. In *Strauss v. Am. Home Prod. Corp.*, the defendant sought to amend its notice of removal to properly allege the citizenship of the parties after the 30-day removability period had passed.[38] The court allowed the filing of the amended notice of removal finding the defendant was not attempting to add a new basis for federal subject

---

[34] 28 U.S.C. § 1653.
[35] *See* R. Doc. 34. On October 8, 2020, the Court allowed limited jurisdictional discovery.
[36] R. Doc. 39 at ¶ 2.
[37] R. Doc. 43 at 3-4.
[38] *Strauss v. Am. Home Prod. Corp.*, 208 F.Supp.2d 711, 717 (S.D. Tex. June 11, 2002); *See also D.J. McDuffie, Inc. v. Old Reliable Fire Ins. Co.*, 608 F.2d 145, 147 (5th Cir. 1979) ("we hold that the faulty allegations were properly cured in the amended petition for removal filed in the federal district court.").

matter jurisdiction but instead was merely seeking to remedy a technical defect by clarifying underlying facts.[39]

In *Savoie v. Penn. Gen. Ins. Co.*, the notice of removal included a "government contractor defense," but did not contain the requisite evidentiary allegations in support of the defense.[40] The plaintiffs opposing removal argued the defendants failed to make a colorable showing of a federal defense in their notice of removal and that the defendants were precluded from providing any supplemental evidence to support this ground for jurisdiction.[41] In response, the defendants argued the supplemental notice of approval was appropriate under § 1653 because the defendants had already raised the government contractor defense in their original pleading and were merely seeking to remedy inadequate jurisdictional allegations.[42] The defendants argued this was necessary "to avoid remand on purely technical grounds."[43] The court agreed with the defendants, finding "[d]ocuments which clarify allegations already made in the notice of removal may be used to supplement the record pursuant to [§] 1653."[44] The Court allowed amendment to set out more specifically the grounds for removal.

Section 1653 is limited to the curing of insufficient allegations of jurisdiction and cannot be extended to "create jurisdiction retroactively where it did not previously exist."[45] Nevertheless, § 1653 "is to be broadly construed to avoid dismissals of actions on

---

[39] *Id.* at 718.

[40] S*avoie v. Penn. Gen. Ins. Co.*, No. 15-cv-1220, 2017 WL 2391264 at *3 (E.D. La. June 2, 2017) (quoting *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000)).

[41] *Id.* at *2.

[42] *Id.*

[43] *Id.* at *3.

[44] *Id.*

[45] *Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 512 (5th Cir. 1985) (holding § 1653 applies to remedy inadequate allegations of jurisdication, not to new causes of action)).

purely 'technical' or 'formal' grounds."[46] Furthermore, § 1653 is to be "liberally construed" in the same fashion as Rule 15(a), which states that leave to amend pleadings "shall be freely given when justice requires."[47] Technical jurisdictional errors are correctable under § 1653 and district courts may abuse their discretion if they deny parties leave to make such amendments.[48]

In the instant matter, AIM alleged diversity jurisdiction both in its original notice of removal[49] and its amended notice of removal.[50] AIM is not seeking to retroactively create jurisdiction by alleging a new theory of jurisdiction, such as federal question. The Court's authority to allow a § 1653 amendment "turns on the nature of the jurisdictional defect."[51] The Court may allow amendment to remedy inadequate jurisdictional allegations, but not defective jurisdictional facts.[52] AIM's improper joinder allegations are offered to remedy inadequate jurisdictional allegations in the original notice of removal, not to correct defective jurisdictional facts. The Court finds that, even if the discovery responses did not start a new 30-day removability period, AIM should be allowed to file its amended notice of removal under § 1653.

---

[46] *Id*. at 887 (citing *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir.1981)).

[47] *Miller v. Stanmore*, 636 F.2d 986, 990 (5th Cir. 1981); Fed. R. Civ. P. 15(a).

[48] *Whitmire v. Victus Ltd.*, 212 F.3d 885, 886 (5th Cir. 2000).

[49] R. Doc. 1 at ¶ 6.

[50] R. Doc. 39-2.

[51] *Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000) (holding that a district court had the authority to allow an amendment of a complaint to cure a failure to state an additional theory of jurisdiction at the time of filing).

[52] *Savoie v. Penn. Gen. Ins. Co.*, No. 15-cv-1220, 2017 WL 2391264 (E.D. La. June 2, 2017) (quoting *Whitmire*, 212 F.3d at 887).

## II.    Plaintiffs' motion to remand is granted.

### A. The Court will not look behind the complete assignment to Proten to determine whether it was collusive.

In its original Notice of Removal, AIM asserts federal diversity jurisdiction under 28 U.S.C. § 1332.[53] AIM alleges diversity jurisdiction exists even though a member of Proten and a member of AIM are citizens of Texas. AIM argues Plaintiffs are attempting to evade this Court's jurisdiction by collusive assignment to Proten and, as a result, Proten's citizenship should be ignored.[54]

In the Notice of Removal, AIM references the alleged assignment of "their contractual rights" from Corporate Outfitters, Ballard Logistics, and Ballard Brands to Proten.[55] As AIM noted, Plaintiffs alleged in their state court petition and in their motion to remand that the assignment from Corporate Outfitters, Ballard Logistics, and Ballard Brands to Proten was a complete assignment of all those entities' right to the agreement with AIM.[56] In its sur-reply to Plaintiffs' motion to remand,[57] AIM cites the allegations of Plaintiffs' state court petition, which include:

> "*Any and all rights to purchase* the 22,000,000 Niosh-certified masks *have been* assigned to Proten by Corporate Outfitters, Ballard Logistics and Ballard Brands."[58]

> "All relief sought herein is demanded on behalf of Proten, *as the assignee of all rights to purchase the 22,000,000 masks.* In the alternative, to the

---

[53] R. Doc. 1 at ¶ 6. The amount in controversy is not in dispute. The alleged contractual damages are alleged to total more than $45 million. *Id.* at ¶ 38.

[54] AIM, in its supplemental memorandum in opposition to the motion to remand, argues Plaintiffs have the burden to rebut the presumption of collusion, but the case cited involved an assignment to create diversity jurisdiction and is decided under the anti-collusion provisions of 28 U.S.C. § 1359, which is not applicable in this case. R. Doc. 47 at 18 (citing *Funderburk Enterprises, LLC v. Cavern Disposal*, Inc., 2009 WL 3101064 at *4 (W.D. Tex. Sept. 22, 2009)).

[55] R. Doc. 1 at ¶ 5.

[56] R. Docs. 1-2 and 12.

[57] R. Doc. 33 at 2.

[58] R. Doc. 1-2 at 4 n.1 (emphasis added).

extent that AIM contends that the assignment was unauthorized or otherwise ineffective, the relief sought is by Corporate Outfitters."[59]

Proten also argues there has been a complete assignment to Proten and presents as evidence the two declarations of Marc Miller, in which he attests Proten was assigned all rights related to AIM.[60] In his first declaration, Miller stated, "Proten was assigned all rights related to AIM brands. . ."[61] In his second declaration, Miller stated, "Corporate Outfitters, Inc., Ballard Brands, LLC, and Ballard Logistics, LLC orally agreed to make a complete assignment to Proten Performance, LLC of any and all rights that they may have had to purchases [*sic*] masks from AIM Brands, LLC."[62]

In its original opposition to the motion to remand, AIM questioned whether there had been an assignment from Corporate Outfitters to Proten, which AIM admitted must be resolved as a simple question of fact.[63] Later, in its sur-reply to the motion to remand, AIM again argues there was no valid assignment and raises questions about the changing versions of the facts told by Plaintiffs.[64] But, in the end, AIM has never argued the assignment was a partial assignment, only that if there was an assignment it was collusive. AIM's collusive assignment argument rests on there being an assignment. Both parties agree that, if there was an assignment to Proten, it was a complete assignment.

District courts in the Fifth Circuit have declined to scrutinize the motives underlying a complete assignment that destroys diversity.[65] The Court accepts the view

---

[59] *Id.* at 6 n.2 (emphasis added).

[60] R. Doc. 12-2 at ¶ 16; R. Doc. 51-1 at ¶ 8.

[61] R. Doc. 12-2 at ¶ 16.

[62] R. Doc. 51-1 at ¶ 8.

[63] R. Doc. 165 at 5 (citing *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 186 (5th Cir. 1990); *Spillers v. Chevron U.S.A. Inc.*, No. 11-cv-2163, 2013 WL 4040060 at *1 (W.D. La. Aug. 6, 2013)).

[64] R. Doc. 47 at 18-19.

[65] *6200 GP, LLC v. Multi Serv. Corp.*, No. 3:14-cv-23-N, 2014 WL 12668504, at *3 (N.D. Tex. Mar. 20, 2014) ("*See, e.g.*, *HDNet MMA 2008 LLC v. Zuffa, LLC*, 2008 WL 958067, at *4 n.7 (N.D. Tex. 2008) ("[The Fifth Circuit's opinion in *Grassi*] does not erode the central holding of *Provident* that complete assignments are not to be scrutinized by the court."); *Ivanhoe Leasing Corp. v. Texaco, Inc.*, 791 F. Supp. 665, 668 (S.D.

espoused by other courts in this circuit that a case involving a complete assignment is distinguishable from a case involving a partial assignment.[66] This Court is bound by the Supreme Court's holding in *Provident Savings Life Assurance Society v. Ford*.[67] As the parties do not dispute that the assignment to Proten, if there was one, was a complete assignment, the Court cannot examine the motives behind the transfer. As a result, AIM has not established diversity jurisdiction exists because it has not proven the citizenship of Proten should be ignored.

### B. Proten's citizenship will not be ignored under the improper joinder doctrine.

In its amended notice of removal, AIM argues Proten's citizenship should be disregarded under the improper joinder doctrine.[68] 28 U.S.C. § 1441(b)(2) prohibits removal solely on the basis of diversity jurisdiction "if any of the parties in interest *properly joined* and served as *defendants* is a citizen of the State in which such action is brought."[69] Under the improper joinder doctrine, a court may dismiss an *improperly joined defendant* from a removed state case and disregard that defendant's citizenship for purposes of diversity jurisdiction.[70] AIM argues the doctrine of improper joinder is available equally to improperly joined plaintiffs and improperly joined defendants,[71] citing *Home Depot, U.S.A., Inc.*[72] Plaintiffs distinguish the *Home Depot* case and argue no Fifth Circuit or Eastern District of Louisiana decisions apply the doctrine to the

---

Tex. May 29, 1992) ("[T]he Supreme Court has never overturned or even reexamined its holding that a federal district court may not consider the motives underlying a complete assignment.") (citing *Grassi*, 894 F.2d at 184–85; *Kramer*, 394 U.S. at 828 n.9).

[66] *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 183 (5th Cir. 1990).
[67] *Provident Savings Life Assurance Society v. Ford*, 114 U.S. 635 (1885).
[68] R. Doc. 39-2 at ¶¶ 36A and 36B.
[69] 28 U.S.C. § 1441(b)(2) (emphasis added).
[70] *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016) (en banc).
[71] R. Doc. 39-2 at 2.
[72] 199 F. Supp. 2d 502, 508 (W.D.La.2001).

improper joinder of plaintiffs.[73] It is not necessary for the Court to determine whether the improper joinder doctrine applies to plaintiffs because, even if it applies and AIM has standing, AIM has not established there is no possibility of recovery by Proten against AIM.[74]

The Fifth Circuit has recognized two ways for the removing party to establish improper joinder: (1) "actual fraud in the pleading of jurisdictional facts" or (2) an "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[75] Only the latter is of concern in this case because AIM does not argue Plaintiffs' jurisdictional allegations were fraudulent. Instead, AIM argues Proten has no reasonable possibility of recovery against AIM because the alleged assignment to Proten was invalid under the laws of Louisiana, Texas, and Arkansas.

AIM's burden of persuasion on Proten's improper joinder is heavy.[76] "In determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor."[77] "The test for improper joinder where there is no allegation of actual fraud is whether the defendant has demonstrated that there

---

[73] R. Doc. 43 at 8 n.39.

[74] The Court notes there are district court cases applying this doctrine to plaintiffs. *See Kansas State University v. Prince*, 673 F. Supp. 2d 1287, 1293 (D. Kan. 2009) ("no logic in prohibiting plaintiffs from defeating diversity jurisdiction by fraudulently joining nondiverse defendants, but allowing them to do so through fraudulently joining nondiverse plaintiffs."). *But cf. Reeves v. Pfizer, Inc.*, 880 F.Supp.2d 926 (S.D. Ill. 2012) ("this Court finds that extending the doctrine of fraudulent joinder to joinder of plaintiffs would be, like fraudulent misjoinder, a massive increase to this Court's jurisdiction. Defendant's argument has not convinced the Court that the fraudulent joinder doctrine is or should be so expanded. Pfizer may very well have a viable statute of limitations defense, but they will need to bring it before the state court.").

[75] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).

[76] *Travis*, 326 F.3d at 649.

[77] *Rodrigue v. Continental Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *2 (citing *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)).

is no possibility of recovery by the plaintiff against an in-state defendant."[78] While the standard for evaluating a claim of improper joinder is similar to the standard used when evaluating a Rule 12(b)(6) motion for failure to state a claim, the scope of the Court's inquiry is broader than it would be with a Rule 12(b)(6) motion; the Court will not "pre-try" the case, but the Court may, in its discretion, "pierce the pleadings" under certain circumstances and consider summary judgment type evidence to determine whether the plaintiff's claim has a factual basis.[79] This summary inquiry is "appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery" against any non-diverse defendant.[80] "[T]he inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."[81] "[A]lthough the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard."[82] "The district court must also take into account 'the status of discovery' and consider what opportunity the plaintiff has had to develop its claims against the non-diverse defendant."[83]

In this case, the Court allowed the parties to conduct limited jurisdictional discovery with respect to assignments from Corporate Outfitters, Ballard Logistics, LLC, Ballard Brands, or any other entities or individuals, to Proten with respect to the purchase or the right to purchase masks from AIM.[84] After conducting discovery, AIM filed its supplemental notice of removal arguing that Proten's citizenship should be disregarded

---

[78] *Rodrigue v. Continental Ins. Co.*, No. 14-1797, 2014 WL 4999465, at *2 (E.D. La. Oct. 7, 2014) (citing *Smallwood*, 385 F.3d at 573).
[79] *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 461 (5th Cir. 2003).
[80] *Smallwood*, 385 F.3d at 573–74.
[81] *Id.* at 574.
[82] *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004).
[83] *Id.*
[84] R. Doc. 34.

under the doctrine of improper joinder.[85] AIM argues the Plaintiffs' responses to discovery requests confirm there was no written assignment to Proten and that for this, and other reasons, Proten has no reasonable possibility of recovery against AIM because Proten's claims are based solely on the assignment.[86]

AIM argues Plaintiffs cannot prove there was a valid assignment from Corporate Outfitters, Ballard Brands, and Ballard Logistics to Proten.[87] According to AIM, and Plaintiffs do not disagree, the three states with an interest in this matter are Louisiana, Texas, and Arkansas. AIM argues the assignment is not valid and enforceable under any of these states' laws.[88]

### i.  Louisiana law

With respect to Louisiana law, AIM argues:

> Under Louisiana law, an assignment must be "proven as any other fact." "[T]he thing," "an ascertainable and determinable 'price,'" and "the consent of the parties" are among the elements of an assignment." Such an assignment becomes "effective against the debtor and third persons only from the time the debtor has actual knowledge, or has been given notice of the assignment." Plaintiffs' jurisdictional discovery responses demonstrate that they cannot prove the requisite elements of an assignment. For example, Plaintiffs admit there was no price or consideration and offer no evidence of the consent or intent of the parties except for their conclusory statement that "Corporate Outfitters, Ballard Brands, and Ballard Logistics, LLC agreed that Proten Performance, LLC would be substituted as the party to the transaction with AIM." Thus, there was no assignment.[89]

Plaintiffs point out the heavy burden imposed on AIM for it to establish Plaintiffs have no possibility of recovery under Louisiana law, citing the Fifth Circuit:

---

[85] R. Doc. 39-2.
[86] R. Doc. 39-2 at para. 36K.
[87] R. Doc. 49 at 8.
[88] AIM also argues Proten does not have a reasonable possibility of recovering against AIM under its unjust enrichment or LUTPA claims or under its argument that, because it was a party to the transaction, it has a cause of action for breach of contract even if there was no assignment. The Court has found AIM has not proven that Proten has no reasonable possibility of recovery for breach of contract based on the assignment. Neither has AIM established Proten has no possibility of recovery under these other theories.
[89] R. Doc. 39-2 at ¶ 36N (citations omitted).

> In considering whether the plaintiff may recover, we need not determine whether the plaintiff will actually, or even probably, prevail on the merits, but look only for a possibility that he may do so. We also evaluate the factual allegations in the light most favorable to the plaintiff and resolve all ambiguities in controlling state law in the plaintiff's favor.[90]

AIM does not argue an assignment must be made in writing. It is clear under Louisiana law an assignment may be created orally, which may be proved like any other fact.[91] Instead, AIM argues Plaintiffs admit there was no price or consideration for the assignment and there was no evidence of the consent of the parties.[92]

Louisiana law does not follow the common law tradition requiring consideration to effect a contract. In *Aaron & Turner, L.L.C. v. Perret*, the Louisiana First Circuit explained:

> "An obligation cannot exist without a lawful *cause*." LSA–C.C. art.1966 (emphasis added). "*Cause* is the reason why a party obligates himself." LSA–C.C. art.1967 (emphasis added). The comments to Article 1967 state, in pertinent part:
>
> > Under this Article, *"cause" is not "consideration."* The reason why a party binds himself need not be to obtain something in return or to secure an advantage for himself. An obligor may bind himself by a gratuitous contract, that is, he may obligate himself for the benefit of the other party without obtaining any advantage in return. LSA–C.C. art.1967, Comment (c) (emphasis added).
>
> Louisiana does not follow the common law tradition that requires consideration to effect an enforceable contract. Rather, the mere will of the parties will bind them, without what a common law court would consider to be consideration to support a contract, so long as the parties have a lawful "cause." The cause need not have any economic value.
>
> Unlike the common law analysis of a contract using consideration, which requires something in exchange, the civil law concept of "cause" can obligate a person by his will only. The difference has been analogized to a civilian contract-consent approach compared to a common law contract-bargain approach. Consideration is an objective element required to form a contract, whereas cause is a more subjective element that goes to the

---

[90] R. Doc. 43 at 8 (citing *Lorenz v. Texas Workforce Comm'n*, 211 F. App'x 242, 246 (5th Cir. 2006) (citations omitted)).

[91] *Louisiana Mobile Imaging, Inc. Ralph L. Abraham, Jr., Inc.*, 21 So.3d 1079, 1082 (La. App. 2 Cir. Oct. 14, 2009).

[92] R. Doc. 39-2 at ¶ 36N.

intentions of the parties. Therefore, in Louisiana law, a person can be obligated by both a gratuitous or onerous contract.[93]

Only cause, not consideration, is required under Louisiana law. In his original declaration, Marc Miller attested the cause for the parties to enter the assignment was "to use a juridical entity jointly owned by Scott Andrews and myself, that would provide all of the benefits of limited liability provided by Texas law, and would insulate our other business operations from risks related to this business venture."[94] He further attested it was the "intention" of the shareholders of Corporate Outfitters to substitute Proten as the purchaser.[95] Because factual disputes must be resolved in Plaintiffs' favor, this is sufficient evidence of cause and intent under the Louisiana law of contracts to show Plaintiffs have a possibility of recovery.

Plaintiffs also assert AIM has no standing to attack the validity of the assignment.[96] The Court need not reach that argument as AIM has not met its burden of showing Proten has no possibility of recovery under the assignment, whether or not it has standing to attack it.

Construing factual allegations, resolving contested factual issues, and resolving ambiguities in the controlling state law in the Plaintiffs' favor, the Court finds that AIM has not established Proten has no possibility of recovery under Louisiana law.

---

[93] *Aaron and Turner, L.L.C. v. Perret*, 22 So.3d 910, 915 (La. App. 1 Cir. May 4, 2009) (citations and footnotes omitted).

[94] R. Doc. 12-2 at ¶ 17.

[95] *Id*. at ¶ 10.

[96] R. Doc. 43 at 6. Plaintiffs argue the assignment cannot be questioned by AIM, as the debtor, unless AIM demonstrates prejudice. *See Keith v. Comco Ins. Co*., 574 So.2d 1270, 1276 (La. App. 2 Cir. Jan. 23, 1991) ("The ultimate debtor. . . cannot question the validity or the consideration of a transfer or assignment of a debt unless he can show prejudice.").

### ii.  Texas law

AIM argues Proten has no possibility of recovery under Texas law. First, in its request for leave to file a supplemental notice of removal, AIM argues Proten cannot prove the assignment was valid under Texas law, citing *In re Ashford*, a state court bankruptcy case.[97] The question in *Ashford* was whether the assignment of a note constituted an assignment of the debtor's VA benefits until the note was paid in full. AIM's citation, in a footnote, of a state bankruptcy court decision, without further explanation or discussion, is not sufficient for AIM to meet its burden of showing Proten has no possibility of recovery under Texas law.

In its reply in support of its motion for leave to file a supplemental notice of removal, AIM again relies on *Ashford* to argue there was no consideration for the oral assignment. AIM again fails to thoroughly brief and argue why the assignment is invalid under Texas law.[98] AIM does not cite any facts to show there was no consideration or intent despite the Marc Miller declarations.[99] Instead, AIM purports to reserve the right "to argue and brief the Court on the other elements of an assignment under Texas law."[100] AIM has the burden of establishing the Court has jurisdiction in connection with the motion to remand and the motion to supplement its notice of removal, now under consideration by the Court. AIM will not have the opportunity to do so later.

---

[97] R. Doc. 39-2 at 8 n.32; *In re Ashford*, 73 B.R. 37, 40 (Bankr. N.D. Tex. Mar. 19, 1987).
[98] R. Doc. 49 at 10.
[99] R. Doc. 12-2; R. Doc. 51-1.
[100] *Id.*

Construing factual allegations, resolving contested factual issues, and resolving ambiguities in the controlling state law in the Plaintiffs, favor, the Court finds that AIM has not established Proten has no possibility of recovery under Texas law.

### iii.   Arkansas law

AIM argues the assignment to Proten is not valid because Arkansas law prohibits the assignment of a right of first refusal to Proten.[101] While it is generally true that, in Arkansas, rights of first refusal are not assignable or transferable unless the particular instrument granting the right of first refusal indicates otherwise,[102] the assignment in this case involves a right of purchase, not a right of first refusal.

AIM cites *McCord v. Foster* to support the premise that Arkansas bars the assignment of a right of first refusal. In *McCord*, a lessee of an estate was given a right of second refusal to purchase property following the right of first refusal of the grantor's two sons. The sons inherited the land following the grantor's death and subsequently sought to sell it to a third party. Three weeks later, the sons signed a sale contract for the same property with the lessees—honoring the lessees' right of refusal. The third-party purchasers filed suit, arguing the lessees' right of refusal was never triggered because the decedent never offered the property for sale, which, according to the third-party purchasers, was a condition precedent for the right of refusal for the lessees. In finding for the lessees, the court explained that a "conventional right of first refusal 'is subject to an agreed condition precedent, typically the owner's receipt of an offer from a third party and the owner's good-faith decision to accept it.' At that point, the right of first refusal "ripens" into an option, and the preemptive right holder may exercise his preemptive right

---

[101] R. Doc. 49 at 10.
[102] *McCord v. Foster*, 505 S.W.3d 742, 746 (Ark. Ct. App. Div. II Oct. 26, 2016).

to create a contract based on the same terms that the owner is willing to accept from the third party. . .[I]t requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the right of first refusal."[103] The court further noted that rights of first refusal are personal and not assignable unless otherwise permitted by the original instrument creating the right.[104] The court reversed the trial court's grant of summary judgment because there were outstanding factual disputes as to whether the grantor intended the lessees' right of refusal to continue after his death.[105]

As explained earlier, unlike *McCord*, the dispute in this case is over the validity of the assignment of a right to purchase rather than a right of first or second refusal. AIM's original state petition stated, "The parties confirmed their prior, verbal agreement that in consideration for purchasing the initial two million masks, Plaintiffs were acquiring the *right to purchase* an additional 22 million upon their completion by KimberlyClark."[106] A purchase order dated June 3, 2020 reflects a standard purchase of 22 million masks and makes no mention of a right of first refusal.[107] A June 19, 2020 email from AIM's Scott Heiman to Proten's Marc Miller confirmed "[w]ithout a doubt that buying the General Masks got you the right to the 22 million. . ."[108] A June 24, 2020 letter from AIM's Marcus Gibbs to Proten's Scott Andrews confirmed a "right to purchase the 22,000,000 [NIOSH-certified masks.]"[109] The agreement at issue in this case is not a conventional right of first refusal. There is no agreed condition precedent, such as the receipt of an offer by a third party. *McCord* is not applicable to the facts of this case. AIM has failed to

---

[103] *Id*. at 746 (citing Arthur L. Corbin, 3 CORBIN ON CONTRACTS § 11.3, at 469 (West 1996)) (citations omitted).
[104] *Id*. at 746.
[105] *Id*. at 747.
[106] R. Doc. 1-2 at ¶ 11.
[107] R. Doc. 47-3 at 9.
[108] *Id*. at 22.
[109] *Id*. at 5.

demonstrate that the right to purchase assigned to Proten is not assignable under Arkansas law.

In a footnote, AIM next argues Corporate Outfitters failed to effectuate delivery of the assignment to Proten.[110] Arkansas law requires "delivery of the subject matter with intent to make an immediate and complete transfer of all right, title, and interest from the assignor to the assignee" in order to render an assignment effective.[111] AIM purports to reserve its right "to argue and brief the Court on the other elements of delivery and intent for an assignment under Arkansas law."[112] AIM has the burden of establishing the Court has jurisdiction in connection with the motion to remand and the motion to supplement its notice of removal, now under consideration by the Court. AIM will not have the opportunity to do so later.

Construing factual allegations, resolving contested factual issues, and resolving ambiguities in the controlling state law in the Plaintiffs' favor, the Court finds that AIM has not established Proten has no possibility of recovery under Arkansas law.

<u>**CONCLUSION**</u>

**IT IS HEREBY ORDERED** that AIM's motion to file a supplemental notice of removal is **GRANTED**.[113]

**IT IS FURTHER ORDERED** that Plaintiffs' motion to remand is **GRANTED**.[114]

---

[110] R. Doc. 49 at 10 n.43.
[111] *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122, 125 (8th Cir. 1994).
[112] R. Doc. 49 at 10 n.43.
[113] R. Doc. 39.
[114] R. Doc. 12.

This action is remanded to 22nd Judicial District Court for the Parish of St. Tammany, State of Louisiana.[115]

      **New Orleans, Louisiana, this 30th day of December, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[115] AIM's Motion to Strike Exhibits B and C of Plaintiffs' Supplemental Memorandum in Support of Motion to Remand is **DENIED AS MOOT**, as the Court did not consider these exhibits in connection with these motions**.** AIM's motion to strike paragraph 8 of Exhibit A to that same memorandum is **DENIED**. R. Doc. 54. Expedited Partners, LLC's motion for appeal/review of the magistrate judge's decision denying its motion to intervene is **DENIED**, as the Court has found that it lacks subject matter jurisdiction**.** R. Doc. 65. The request to intervene should be addressed in the state court. Plaintiffs' request for attorneys' fees and costs is **DENIED**. R. Doc. 12 at 3.